Case number 19-2346. S. Baxter Jones v. City of Detroit MI at all. Arguments not to exceed 15 minutes per side. Ms. Ronk, you may proceed for the appellants. Your mic is not on. I have reserved five minutes of my time for rebuttal, but I don't even think I will need the remainder of that. I'm just going to touch on some points. In this case, we have a full video depicting really the entire action that's at issue here. Pursuant to case law, this has to be looked at in the light depicted by the video rather than the light most favorable to the plaintiff. So if the plaintiff's testimony contradicts the video, we look to the video. Ms. Ronk, the video is not the whole incident, is it? I mean, I've seen it several times. The video shows the plaintiff being lifted into the van and with him securing his head and he gets into the van, but that's only part of the claim, isn't it? The other part of the claim is failing to secure his wheelchair to the van, and that's not in the video, is it? That's correct, Your Honor. We don't dispute that this is not a wheelchair van and that there are no systems to secure the wheelchair in this van. The entire incident is not on video. Just the first portion is, right? That's correct, Your Honor. Okay. But again, we're not, we concur with the plaintiff that it was not secured on the trip to the detention center. We are not disputing that in any way. What the video does show is that at the time the wheelchair is being lifted into the van, the police officers actually ask the plaintiff if it is all right if they lift his wheelchair into the van, and he answers in the affirmative. Go ahead. He doesn't answer. He nods his head, right? Yeah, he nods his head in the affirmative. He did not say yes or no, but it's quite clear that he's nodding his head in the affirmative. I mean, I don't think that they have contested that that's what he is doing. I think they are. I think there was an allegation that they lifted him up without his consent. If they are making that thing, I think it's very clear that he answered in the affirmative by shaking his head yes. The officer clearly asked him, is it all right if we lift you up? Yeah. The video, does it show the individual that accompanied him in the back of the van or the driver? Are they in the video at any point? They are not, your honor. Well, I don't understand why it's so hard to identify two people. That's so puzzling to me how you couldn't identify. I would have thought when they arrived at the police station, there would be documentation as to who drove and who was in the back. I can't answer that question, your honor. I don't know why they couldn't identify those people. I mean, I would agree with you. I would think that there should be some paperwork saying who the driver is. Well, isn't that terribly important in this case when one of his claims is that during the course of the ride, he was having to bend down because his head was hitting the top and that his wheelchair was not secured. He claims that he complained both to the intern who was in the back with him and to the driver of the van. With regards to the trip to the detention, that part is going to have to be looked at in the and take his testimony as is for deciding this motion. I'm not going to dispute that. I mean, that is going to have to be his testimony and look at it to decide whether or not there is, in fact. But the reason Judge Moore's right that this is a really important question is you can hold the officers liable for what they should have reasonably anticipated when they put him in this van. But when it comes to objections during the ride, those objections go only to the individual in the back and the driver. And so it's a funny situation that they're not in the case. They're not parties and the officers that are named individually can't be held responsible for what the driver and the person in the back did. They can be held responsible. Well, let me put it this way. There was a commander who ordered these individuals to put him in the back of the van. He was asked if it was okay. He knocked his head and gets put in the back of the van. For the whole time the video was running, we do not see him say anything to anybody about wanting out of the van, that his neck is hurt, that he has any concerns at all. Now, Plaintiff's attorney will say there was a moment where his head is bent and maybe he said something under his breath that's not being recorded. I mean, if that happened, it happened. But I don't think that changes the analysis. Your point is that there's a duty on the part of the person who's been arrested to complain about the situation and you're deriving that entirely from the handcuffing cases. Is that right? That is not right. Mr. I don't believe that's correct. The plaintiff is claiming that he had a pre existing neck complaint, just because an individual's in a wheelchair doesn't mean that they would have any injury to their neck. And out of just common sense to the police officers who have asked him to be put in the back of the van, he has acknowledged affirmatively, there's no reason why they would believe for an ordinary person as a judge made a finding of fact, that that would be any kind of excessive forces individual that simply putting the hand on the head like they do, like police officers do in every case when they put them in a vehicle and bending the head down would cause anybody any injury, which is where they're saying this, this injury may have occurred. You said that the district judge made a finding of fact is this on summary judgment? Yes, the judge judge can't make findings of fact on summary judgment, right? The judge will review the video and looking at the video in the light most favorable to the video, he said this would not be found this would not be excessive force if this was a normal person. The only way that this could be excessive force is if someone had a latent defect, and they advise the police that such a defect existed, such as an injury to the neck. Now, we don't have to look at the handcuff cases, we can look at the case cited by the plaintiff, which is the jostling john versus hinky case, where the court makes very clear that it's very important that Mr. the plaintiff in that case repeatedly advise the officer that he was in a wheelchair, but that his legs could not be bent. That is completely similar to this case where the person is in a wheelchair, but didn't advise that his neck couldn't be bent. Absent that in the same john versus hinky case, they would not have found I don't believe if you read through that analysis that that would be excessive force. It's that the officers knew that Mr. the plaintiff in St. John had an injury to his legs such that putting him in that car would result in excessive force. So that's the same as putting the plaintiff in our case in that van would be excessive force because he has an injury to his neck, which he did not advise the officers of at any time during that video. Now whether it happened after those doors closed and it's driving down the street. I we don't we have to go by the plaintiff's testimony, but he certainly did not advise those officers who are being respectful, and are being about as nice as any Detroit police officer I've ever seen to the gentleman. I mean, how is it reasonable to think that an officer is going to know bending a head down to put a person in a vehicle which they are required to do is excessive force. And I just want to quickly say, so in the judge's second order where he he indicates that he doesn't believe there's a question of fact with regards to excessive force. He fails him he still fails to make any analysis of qualified immunity. The plaintiff argues that the fact that he found that it could be excessive force was enough to address qualified immunity. That's not correct. The judge already found that there was qualified immunity on the ADA claims, because there is no clear case law as to what needs to be provided to a person in post arrest travel. If they are disabled. These officers did not know that putting this gentleman in the back of the van was in fact being excessively forceful. Because I suppose could get to the question about whether if you have somebody in a wheelchair, whether it is excessive force if you transport them unsecured. See, now the law, the law is unclear here because there's still open law, as the judge points out, with regards to what is required for a handicapped individual and post police arrest. Is that excessive force now keep in mind, even if you were to say the officer who ordered these other officers to put him in the van may you could say be doing it not be entitled to qualified immunity. These officers putting them in the van clearly could believe that what they are doing was not excessive force. They all knew that the that the van did not have wheelchair secure items, whether it was straps or clips or anything like that, right? Yes, they all when they put him in the van, they knew that the this was not a wheelchair van that the city of Detroit did not have a wheelchair van that was equipped with such restraint. And someone and someone can you maybe you can tell me who decided that using a intern, a summer intern or seasonal intern to brace the wheelchair with his foot or her foot was enough. Who decided that that would be the commander Baron was the one making the decisions on the scene. Okay, I see your your red card is up. And I know I've taken you beyond when it came up. Do you wish to save your remaining time for rebuttal? I do, Your Honor. Sure. Okay, Miss James. Good afternoon. I'll advise you that I'm speaking on the phone and seeing you on video. So I hope there's no lag. May it please the court and Captain Brenner James here on behalf of the plaintiff appellee Mr. S. Baxter Jones. I want to address a few things raised in the initial argument. One is, I think it's fair to say that there's actually dispute in how to interpret what we see in the video. And in many ways, the video actually I cannot hear Miss James. Can anybody else? I can hear I can hear. Okay, I have no audio. Good afternoon, Your Honors. I believe we have the sound issue straightened out now. And I have the clock paused at 14 minutes 16 seconds. We agreed that we should have Miss James start from the beginning because Judge Griffin didn't hear her at all. So if you would start the clock new and if Miss James would start from the beginning. May it please the court. I'm Catherine Brenner James for the plaintiff appellee S. Baxter Jones. I want to address a couple of comments that came up in the first presentation and then I'll jump into qualified immunity. Firstly, I want to address the video evidence. Defendants claim that there's no question of fact as to certain facts that occur during the course of the video. But if anything, there are some certainly questions of fact as because the video itself isn't perfect and incomplete as Judge Griffin noted. But if anything, the video supports plaintiff's version of the material facts. It shows at the beginning that he unlocked the brakes of his wheelchair when he was taking him into custody and cooperated in every way imaginable with the officers. It also points out that as he was being lifted into the back of the someone at least one voice shouted out watch his head indicating that it was obvious to others that he wasn't going to fit. It also shows defendant Fluker put his hand up between the plaintiff's head and the door frame and pushed his head down as that was happening. Now there is I think some over whether or not the plaintiff made any sound at that time. He testified at his deposition that he cried out. Now the audio on the video is dominated by a woman's voice and it's hard to tell if there are any other sounds. We don't know what the officers might have heard and I think it's reasonable to say that a reasonable jury might conclude that the plaintiff's testimony is the reliable evidence on this issue. But it also shows that the plaintiff simply didn't fit safely and securely in the back of the van. After he was wheeled to the back of the van or I guess toward the front of the van really the video shows that the plaintiff is slumped over due to the lack of headroom. Ms. James you know just if we focus on the part of the interaction where that the video covers going into the van you know just I want you to tell me what I'm missing but you know it actually seems like a pretty polite encounter all around. You know that's the instinct one has. Now maybe what I'm missing is okay fine everyone acted politely but what were they thinking with a van? So maybe that's the but I must say when you look at the video it does look like a pretty reasonable situation all around. Well and I think you've hit on some really important points there. You know one the subjective state of mind and how how nice or polite they were the officers were is really not part of the calculus under Graham versus O'Connor. What we're really looking at is what was objectively reasonable under those circumstances and we have to look at the totality of the circumstances and what happened here in lifting a person while seated in a wheelchair in and of itself is an incredibly dangerous act. We know from St. John versus Hickey that you risk the person falling out of their chair. That didn't happen to happen here but it's an inherently risky thing to do and a reasonable trier of that. Well how about how about this way of thinking about it? Are there cases where the the claim arises out of someone with a disability? So in this case a wheelchair, crutches, whatever it might be. So it arises out of a disability that tends to exacerbate the problem. Without the but the case comes to the court solely as excessive force with agreement that there was no violation of the ADA. That seems like a funny disconnect in this case. Well St. John versus Hickey is a fourth amendment excessive force case and it is. Did it have an ADA claim in it? I don't recall that being the primary impetus in the in the Sixth Circuit opinion whether there was an ADA claim at some point. Maybe maybe maybe the answer is this is a bad question or you could put it more politely but there seems to be a relationship between ADA compliance and excessive force with respect to someone in a wheelchair is all I'm getting at. Maybe I should stop there that that's not really true. Well if I may Judge Sutton, ADA claims tend to go toward the municipality not the individual officer. Here we're talking about excessive force claims against the individual officers and maybe that's the distinction to keep in mind. I glanced at St. John v. Hickey just now and whether there may have been an ADA component at some point during the course of the case it's not clear but certainly by the time it got to the Sixth Circuit in 2005 they were looking at the excessive force claim under 1983 that really has to do with how Mr. St. John was being handled in the course of his arrest and his disability was part of the totality of circumstances that had to be taken into account in that occurrence and that is exactly what we have here. There's it's it's not as straightforward as a handcuffing test which was developed for a very particular purpose as as you know very well well Judge Sutton because you you've heard some of there is there is this there is this carryover point which I think your friends on the other side are relying on that you can have latent problems so that someone who's in a wheelchair doesn't prove they have a pre-existing neck injury it would be an example and so is that a fair point to make here that with respect to some problems that aren't obvious it's important for the individual to explain whoa whoa whoa I can't do that or that hurts or whatever. It may be in in other scenarios and it certainly was in in St. John because in that case they opted to take him out of his wheelchair and transfer him into the back of a squad car. What we have here is is a different scenario. Mr. Jones's neck injury really has very little to do with liability in this case other than I suppose it's somewhat related to why he was in a wheelchair in the first place. It really has more to do with the calculus of his damages. He was treated unreasonably and handled unreasonably regardless of the neck injury. If he were in a wheelchair because he had a sprained ankle we'd still be here but the damages are different because he had a to to address. One is the suggestion that Mr. Jones consented to being lifted into the van but the context of that interaction really can't be ignored. I think it's very important to point out that as a black man interacting with police he could be risking his life by disobeying an order or by saying no and it I think this... Ms. James all the all the police officers are black too. That's true but but I mean everybody in the video is African-American. That does not change the calculus of the power dynamic that's different in that relationship but there's also nothing... Because he's black he has okay the African-American police officers are likely to treat him more severely because he's black as opposed to being white. It has to do with why he would readily consent and not give the impression with with that he would be disobeying an order but there's also nothing in the record to suggest that he was familiar with the interior of the van or that he in any way understood that by lifting him into the van that he wouldn't fit, that he wouldn't have have safety belts once he got inside or that he would be injured in any way. So to the extent that there was any consent whatsoever it's not clear the limit of that consent. So on the safety belt point was so I could see two different issues. One are you in a safety belt within the wheelchair and then is there a safety belt locking the wheelchair in place? You're referring to the second point right? Well there there was there was neither. You are right to point out that for people who are transported in a wheelchair both of those security locks or belts are equally important. So you're saying and you're saying his wheelchair didn't have a belt or he had one he didn't put it on or it was on? I we were talking a little bit slight distinction. Sometimes there's a belt that secures the person and ultimately attaches to the vehicle somewhere. There's also a wheel lock. So I was referring to the van having neither of those. So but was there a belt on the wheelchair just that went with the wheelchair wherever it went? Was that was that on? I believe well I'll say this much. I don't believe that the record makes that clear. That that has not been a point of contention between the parties. I don't know the record establishes that. I think that's typical. How about the lock on the wheelchair wheels? Was that engaged? It was and I believe there is testimony that it was engaged but inside a moving vehicle a wheel lock does not prevent a wheelchair from moving inside the vehicle. Wheel lock. Miss James I thought the claim inside the van was that he didn't have enough headroom and that therefore his head was bumping on the ceiling. Is that that's a claim isn't it? It's definitely part of it. I didn't know that there was a claim that the jostling in the van would cause a whiplash. Is that is that the theory too that because he's not seat belted that he's got whiplash? Whiplash exactly. It really has more to do with bearing down on the on the wheelchair and having to grip with his own hands to hold himself in and being jostled around on the street. That creates it creates a neck injury that he's hanging onto his wheelchair. There was neck injury to his cervical spine. There was also shoulder arm and hand injuries. This is all part of the same transaction. Once he you know it's one thing to be placed into a position where your head is being forced down and you're being forced to slouch down. It is heightened once the space that you're in is moving around you. Michigan is quite famous for its poor road conditions. Miss James you know one one thing about the transportation the claims that arise during the transportation is not knowing who those individuals were. You know my first reaction to the case was to be frustrated with the city and how can you not know who these people were. But you know maybe the intern is a different matter but I don't understand how the driver wouldn't be in the paperwork. Isn't that part of the paperwork when you get to the police station and therefore very accessible or wrong? You would think so. We've been trying to find out who that was the relevant driver. Yes absolutely. And what did the city say in response? Let me see I believe this is cited in a footnote in our brief with a precise note to the record. I will try to find it quickly for you. It's on page six of our brief where we noted all the depositions where we asked that question as well as interrogatories to the defendants and an affidavit that was provided in response. That's in footnote five on page. Did you ask for the documents the paperwork that is filled out the minute you get to the station? I mean I'm not looking really for blame. I'm just so I don't have a citation to our specific response request for production. I have a citation to our interrogatory. You know that's something that you would think would have been in the rule 26 disclosures. You know this is so fundamental to the underlying facts. Just again just to be clear I'm not trying to blame anybody. I'm purely in problem solving mode. This would have a very easy question for the district court judge to say now listen they have to have paperwork here at least who the driver was that brought into the station presumably the person in the back as well please help us get this. I mean I'm still the question's an open question. I just don't understand why that can't work because I mean discovery is voluntary until someone doesn't comply and then you go to the judge. This is this is about as reasonable a request as you get. I don't have an answer for why the city could not provide that information. Do you think the judge would not help? You know I can't recall whether we had any specific conversations with the judge about that issue. I can't answer that off the top of my head. Ms. Jones before you're out of time I mean this is not a negligence action. This is an action you're alleging excessive force. That's right. And you're claiming that it was clearly established by federal law at the time that this force was excessive. What are the best cases that you can cite to us that this is and that these officers were on clear notice that what they did violated the constitution? The two cases that are of utmost importance here are St. John v. Hickey which does not impose a rigid notice requirement. Yes that's a fact under the totality of the circumstances of that case but that case repeats over and over what Graham v. O'Connor, Graham v. Connor excuse me tells us which is to pay careful attention to the facts and circumstances of each particular case. So in this case we look at what was objectively reasonable under these circumstances and under these circumstances the officers arrested a person while seated in his wheelchair. They opted to lift him wheelchair and all which is incredibly dangerous in and of itself put him into a vehicle that not only didn't fit him didn't have safety precautions for him and his and his wheelchair and the natural consequences of that were that he was transported in a very dangerous way that did in fact cause him injury. All of that wrapped together in the totality of the circumstances was unreasonable here. The second case you really need to look at is Baines v. Cleland. That really addresses the heart of the qualified immunity question where it makes it clear that no controlling precedent to support the requirement that a prior case need involve the same precise facts or otherwise be directly on point. It refers back to the Hope v. Pelzer standard of St. John v. Hickey employed. St. John v. Hickey did not point back to another case where a person in a wheelchair was lifted and fell out and taken out of the wheelchair and their leg bent. It looked back to the Graham v. Connor overall analysis and that what that's exactly what needs to be done here. Thank you. Thank you. Rebuttal time. Yes, just to address Judge Sutton's question about where would you get the document that says who the driver is. That actually is the detention center records of the state of Michigan. You can request it from the state of Michigan. It's going to say who dropped him off at the detention center. But I mean can I, I'm trying not to do this in a blame sense. I'm trying to do it in a sense of hey, this is pretty relevant information. Why can't you get that for them? It seems like it's easier for you than for them and this is what discovery allows. It's no easier from us. We would have to make the request in exactly the same way the plaintiff. It's a document for the state of Michigan, not for the city of Detroit. Why is it through the state of Michigan? I'm unclear. It's a detention center which is run by the state of Michigan. If a request is made to the detention center, they have the records from when the individual is dropped off and on that record usually in other cases, I have not seen the Michigan records in this case particularly, but that's where in other cases we see which officers dropped off an individual at the detention center. I'm just providing that by way of information. It would take exactly the same for me to take from her to order the state of Michigan record. I'm not trying to be critical, but is your position that when you're asked for that information, it's just not within your authority to get it? It's not in our possession. I wasn't the attorney of record at the time the discovery was answered. You had to answer the discovery based on what's in your possession. State of Michigan records are not in our possession. I got it. We are two separate entities. Who owned the van? The van is owned by the city of Detroit. So the city of Detroit doesn't have records as to who was driving the van on a particular day? No. Keep in mind, this is a very unusual circumstance that the police are running into. They are, in actuality, going to ask to be arrested, but this is a situation that they had not run into. An individual in a wheelchair is being arrested. Under the city of Detroit's police policy, a van can be used. This didn't happen in a normal course of events kind of thing. So a van is requested. They bring a van. It's not a wheelchair-accessible van. We now have a wheelchair-accessible van as part of offering up to the plaintiff. In this case, we have taken care of all of these things. The thing is, as you pointed out, there's a negligence case and there's an excessive force case. This is not an excessive force case. This is officers who are in a unique situation who don't know what the ADA calls for, who are operating under what they have available to them, trying to make the best decisions they can make. For the same reason, the judge found that qualified immunity applied in the ADA claim against the officers. I'm not quite sure why the plaintiff said the ADA was against the city and excessive force was against the officers. They sued the officers for ADA violations and for the exact same reason, they should be given qualified immunity in this case. Excuse me, were they given qualified immunity on the ADA claims or was it simply stated that there was no viable ADA claim? No, the court specifically held that they were entitled to qualified immunity under the ADA claims and gave an analysis in its order regarding same. He gave many reasons why the ADA claim was being dismissed and qualified immunity was one of them. Again, there has been no analysis of qualified immunity by this judge. Therefore, at the very least, this needs to be turned back to the district judge to make a determination on ADA and also the officers who are not making the decisions on the scene, who are simply doing what the commander baron is telling them and believing this is good under the ADA is not excessive force. Those officers should not be subjected to excessive force claims. This was not what excessive force is about. These officers were trying to do the best they could under what they had in the most difficult circumstances in the world, but it's not excessive force and that's the end of my statement. Okay, absent any other questions, we thank you both for your argument and the case will be submitted.